(Slip Opinion) OCTOBER TERM, 2008 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GROSS *v*. FBL FINANCIAL SERVICES, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 08–441. Argued March 31, 2009—Decided June 18, 2009

Petitioner Gross filed suit, alleging that respondent (FBL) demoted him in violation of the Age Discrimination in Employment Act of 1967 (ADEA), which makes it unlawful for an employer to take adverse action against an employee "because of such individual's age," 29 U. S. C. §623(a). At the close of trial, and over FBL's objections, the District Court instructed the jury to enter a verdict for Gross if he proved, by a preponderance of the evidence, that he was demoted and his age was a motivating factor in the demotion decision, and told the jury that age was a motivating factor if it played a part in the demotion. It also instructed the jury to return a verdict for FBL if it proved that it would have demoted Gross regardless of age. The jury returned a verdict for Gross. The Eighth Circuit reversed and remanded for a new trial, holding that the jury had been incorrectly instructed under the standard established in *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, for cases under Title VII of the Civil Rights Act of 1964 when an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations—*i.e.*, a "mixed-motives" case.

*Held:* A plaintiff bringing an ADEA disparate-treatment claim must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision. Pp. 4–12.

   (a) Because Title VII is materially different with respect to the relevant burden of persuasion, this Court's interpretation of the ADEA is not governed by Title VII decisions such as *Price Water-*

*house* and *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 94–95. This Court has never applied Title VII's burden-shifting framework to ADEA claims and declines to do so now. When conducting statutory interpretation, the Court "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Federal Express Corp.* v. *Holowecki*, 552 U. S. ___, ___. Unlike Title VII, which has been amended to explicitly authorize discrimination claims where an improper consideration was "a motivating factor" for the adverse action, see 42 U. S. C. §§2000e–2(m) and 2000e–5(g)(2)(B), the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. Moreover, Congress neglected to add such a provision to the ADEA when it added §§2000e–2(m) and 2000e–5(g)(2)(B) to Title VII, even though it contemporaneously amended the ADEA in several ways. When Congress amends one statutory provision but not another, it is presumed to have acted intentionally, see *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 256, and "negative implications raised by disparate provisions are strongest" where the provisions were "considered simultaneously when the language raising the implication was inserted," *Lindh* v. *Murphy*, 521 U. S. 320, 330. Pp. 5–6.

   (b) The ADEA's text does not authorize an alleged mixed-motives age discrimination claim. The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. See *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604, 610. To establish a disparate-treatment claim under this plain language, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. See *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. ___, ___. It follows that under §623(a)(1), the plaintiff retains the burden of persuasion to establish that "but-for" cause. This Court has previously held this to be the burden's proper allocation in ADEA cases, see, *e.g.*, *Kentucky Retirement Systems* v. *EEOC*, 554 U. S. ___, ___–___, ___–___, and nothing in the statute's text indicates that Congress has carved out an exception for a subset of ADEA cases. Where a statute is "silent on the allocation of the burden of persuasion," "the ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims." *Schaffer* v. *Weast*, 546 U. S. 49, 56. Hence, the burden of persuasion is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action. Pp. 7–9.

   (c) This Court rejects petitioner's contention that the proper interpretation of the ADEA is nonetheless controlled by *Price Waterhouse*, which initially established that the burden of persuasion shifted in alleged mixed-motives Title VII claims. It is far from clear that the

Syllabus

Court would have the same approach were it to consider the question today in the first instance. Whatever *Price Waterhouse*'s deficiencies in retrospect, it has become evident in the years since that case was decided that its burden-shifting framework is difficult to apply. The problems associated with its application have eliminated any perceivable benefit to extending its framework to ADEA claims. Cf. *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 47. Pp. 10–11.

526 F. 3d 356, vacated and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which SOUTER, GINSBURG, and BREYER, JJ., joined. BREYER, J., filed a dissenting opinion, in which SOUTER and GINSBURG, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 08–441

————

## JACK GROSS, PETITIONER *v.* FBL FINANCIAL SERVICES, INC.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[June 18, 2009]

JUSTICE THOMAS delivered the opinion of the Court.

The question presented by the petitioner in this case is whether a plaintiff must present direct evidence of age discrimination in order to obtain a mixed-motives jury instruction in a suit brought under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. §621 *et seq*.  Because we hold that such a jury instruction is never proper in an ADEA case, we vacate the decision below.

I

Petitioner Jack Gross began working for respondent FBL Financial Group, Inc. (FBL), in 1971.  As of 2001, Gross held the position of claims administration director.  But in 2003, when he was 54 years old, Gross was reassigned to the position of claims project coordinator.  At that same time, FBL transferred many of Gross' job responsibilities to a newly created position—claims administration manager.  That position was given to Lisa Kneeskern, who had previously been supervised by Gross and who was then in her early forties.  App. to Pet. for Cert. 23a (District Court opinion).  Although Gross (in his

new position) and Kneeskern received the same compensation, Gross considered the reassignment a demotion because of FBL's reallocation of his former job responsibilities to Kneeskern.

In April 2004, Gross filed suit in District Court, alleging that his reassignment to the position of claims project coordinator violated the ADEA, which makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U. S. C. §623(a). The case proceeded to trial, where Gross introduced evidence suggesting that his reassignment was based at least in part on his age. FBL defended its decision on the grounds that Gross' reassignment was part of a corporate restructuring and that Gross' new position was better suited to his skills. See App. to Pet. for Cert. 23a (District Court opinion).

At the close of trial, and over FBL's objections, the District Court instructed the jury that it must return a verdict for Gross if he proved, by a preponderance of the evidence, that FBL "demoted [him] to claims projec[t] coordinator" and that his "age was a motivating factor" in FBL's decision to demote him. App. 9–10. The jury was further instructed that Gross' age would qualify as a "'motivating factor,' if [it] played a part or a role in [FBL]'s decision to demote [him]." *Id.*, at 10. The jury was also instructed regarding FBL's burden of proof. According to the District Court, the "verdict must be for [FBL] . . . if it has been proved by the preponderance of the evidence that [FBL] would have demoted [Gross] regardless of his age." *Ibid.* The jury returned a verdict for Gross, awarding him $46,945 in lost compensation. *Id.*, at 8.

FBL challenged the jury instructions on appeal. The United States Court of Appeals for the Eighth Circuit reversed and remanded for a new trial, holding that the jury had been incorrectly instructed under the standard established in *Price Waterhouse* v. *Hopkins*, 490 U. S. 228

(1989). See 526 F. 3d 356, 358 (2008). In *Price Water-house*, this Court addressed the proper allocation of the burden of persuasion in cases brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. §2000e *et seq.*, when an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations—*i.e.*, a "mixed-motives" case. 490 U. S., at 232, 244–247 (plurality opinion). The *Price Waterhouse* decision was splintered. Four Justices joined a plurality opinion, see *id.*, at 231–258, Justices White and O'Connor separately concurred in the judgment, see *id.*, at 258–261 (opinion of White, J.); *id.*, at 261–279 (opinion of O'Connor, J.), and three Justices dissented, see *id.*, at 279–295 (opinion of KENNEDY, J.). Six Justices ultimately agreed that if a Title VII plaintiff shows that discrimination was a "motivating" or a "'substantial'" factor in the employer's action, the burden of persuasion should shift to the employer to show that it would have taken the same action regardless of that impermissible consideration. See *id.*, at 258 (plurality opinion); *id.*, at 259–260 (opinion of White, J.); *id.*, at 276 (opinion of O'Connor, J.). Justice O'Connor further found that to shift the burden of persuasion to the employer, the employee must present "direct evidence that an illegitimate criterion was a substantial factor in the [employment] decision." *Id.*, at 276.

In accordance with Circuit precedent, the Court of Appeals identified Justice O'Connor's opinion as controlling. See 526 F. 3d, at 359 (citing *Erickson* v. *Farmland Industries, Inc.*, 271 F. 3d 718, 724 (CA8 2001)). Applying that standard, the Court of Appeals found that Gross needed to present "[d]irect evidence . . . sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." 526 F. 3d, at 359 (internal quotation marks omitted). In the Court of Appeals' view, "direct evidence" is only that

evidence that "show[s] a specific link between the alleged discriminatory animus and the challenged decision." *Ibid.* (internal quotation marks omitted). Only upon a presentation of such evidence, the Court of Appeals held, should the burden shift to the employer "'to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor.'" *Ibid.* (quoting *Price Waterhouse*, *supra*, at 276 (opinion of O'Connor, J.)).

The Court of Appeals thus concluded that the District Court's jury instructions were flawed because they allowed the burden to shift to FBL upon a presentation of a preponderance of *any* category of evidence showing that age was a motivating factor—not just "direct evidence" related to FBL's alleged consideration of age. See 526 F. 3d, at 360. Because Gross conceded that he had not presented direct evidence of discrimination, the Court of Appeals held that the District Court should not have given the mixed-motives instruction. *Ibid.* Rather, Gross should have been held to the burden of persuasion applicable to typical, non-mixed-motives claims; the jury thus should have been instructed only to determine whether Gross had carried his burden of "prov[ing] that age was the determining factor in FBL's employment action." See *ibid.*

We granted certiorari, 555 U. S. ___ (2008), and now vacate the decision of the Court of Appeals.

## II

The parties have asked us to decide whether a plaintiff must "present direct evidence of discrimination in order to obtain a mixed-motive instruction in a non-Title VII discrimination case." Pet. for Cert. i. Before reaching this question, however, we must first determine whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under

the ADEA.[1]  We hold that it does not.

## A

Petitioner relies on this Court's decisions construing Title VII for his interpretation of the ADEA.  Because Title VII is materially different with respect to the relevant burden of persuasion, however, these decisions do not control our construction of the ADEA.

In *Price Waterhouse*, a plurality of the Court and two Justices concurring in the judgment determined that once a "plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account." 490 U. S., at 258; see also *id.*, at 259–260 (opinion of White, J.); *id.*, at 276 (opinion of O'Connor, J.).  But as we explained in *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 94–95 (2003), Congress has since amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was "a motivating factor" for an adverse employment decision.  See 42 U. S. C. §2000e–2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that

---

[1] Although the parties did not specifically frame the question to include this threshold inquiry, "[t]he statement of any question presented is deemed to comprise every subsidiary question fairly included therein."  This Court's Rule 14.1; see also *City of Sherrill* v. *Oneida Indian Nation of N. Y.*, 544 U. S. 197, 214, n. 8 (2005) ("'Questions not explicitly mentioned but essential to the analysis of the decisions below or to the correct disposition of the other issues have been treated as subsidiary issues fairly comprised by the question presented'" (quoting R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice 414 (8th ed. 2002))); *Ballard* v. *Commissioner*, 544 U. S. 40, 46–47, and n. 2 (2005) (evaluating "a question anterior" to the "questions the parties raised").

race, color, religion, sex, or national origin was *a motivat-ing factor* for any employment practice, even though other factors also motivated the practice" (emphasis added)); §2000e–5(g)(2)(B) (restricting the remedies available to plaintiffs proving violations of §2000e–2(m)).

This Court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now. When conducting statutory interpretation, we "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Federal Express Corp.* v. *Holowecki*, 552 U. S. ___, ___ (2008) (slip op., at 2). Unlike Title VII, the ADEA's text does not provide that a plaintiff may estab-lish discrimination by showing that age was simply a motivating factor. Moreover, Congress neglected to add such a provision to the ADEA when it amended Title VII to add §§2000e–2(m) and 2000e–5(g)(2)(B), even though it contemporaneously amended the ADEA in several ways, see Civil Rights Act of 1991, §115, 105 Stat. 1079; *id.*, §302, at 1088.

We cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA. When Congress amends one statutory provi-sion but not another, it is presumed to have acted inten-tionally. See *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 256 (1991). Furthermore, as the Court has explained, "negative implications raised by disparate provisions are strongest" when the provisions were "con-sidered simultaneously when the language raising the implication was inserted." *Lindh* v. *Murphy*, 521 U. S. 320, 330 (1997). As a result, the Court's interpretation of the ADEA is not governed by Title VII decisions such as *Desert Palace* and *Price Waterhouse*.[2]

---

[2]JUSTICE STEVENS argues that the Court must incorporate its past interpretations of Title VII into the ADEA because "the substantive

## B

Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Assn.* v. *South Coast Air Quality Management Dist.*, 541 U. S. 246, 252 (2004) (internal quotation marks omitted). The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U. S. C. §623(a)(1) (emphasis added).

The words "because of" mean "by reason of: on account of." 1 Webster's Third New International Dictionary 194 (1966); see also 1 Oxford English Dictionary 746 (1933)

_____

provisions of the ADEA were derived *in haec verba* from Title VII," *post*, at 4 (dissenting opinion) (internal quotation marks omitted), and because the Court has frequently applied its interpretations of Title VII to the ADEA, see *post,* at 4–6. But the Court's approach to interpreting the ADEA in light of Title VII has not been uniform. In *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581 (2004), for example, the Court declined to interpret the phrase "because of . . . age" in 29 U. S. C. §623(a) to bar discrimination against people of all ages, even though the Court had previously interpreted "because of . . . race [or] sex" in Title VII to bar discrimination against people of all races and both sexes, see 540 U. S., at 584, 592, n. 5. And the Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792 (1973), utilized in Title VII cases is appropriate in the ADEA context. See *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133, 142 (2000); *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U. S. 308, 311 (1996). In this instance, it is the textual differences between Title VII and the ADEA that prevent us from applying *Price Waterhouse* and *Desert Palace* to federal age discrimination claims.

(defining "because of" to mean "By reason *of*, on account *of*" (italics in original)); The Random House Dictionary of the English Language 132 (1966) (defining "because" to mean "by reason; on account"). Thus, the ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. See *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604, 610 (1993) (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process *and had a determinative influence on the outcome*" (emphasis added)). To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. See *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. ___, ___ (2008) (slip op., at 14) (recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation (internal quotation marks omitted)); *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 63–64, and n. 14 (2007) (observing that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition" and that the statutory phrase, "based on," has the same meaning as the phrase, "because of" (internal quotation marks omitted)); cf. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984) ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it").[3]

---

[3] JUSTICE BREYER contends that there is "nothing unfair or impractical" about hinging liability on whether "forbidden motive . . . play[ed] a role in the employer's decision." *Post*, at 2–3 (dissenting opinion). But that is a decision for Congress to make. See *Florida Dept. of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U. S. ___, ___ (2008) (slip op., at 18). Congress amended Title VII to allow for employer liability when discrimination "was *a motivating factor* for any employment practice,

It follows, then, that under §623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action. Indeed, we have previously held that the burden is allocated in this manner in ADEA cases. See *Kentucky Retirement Systems* v. *EEOC*, 554 U. S. \_\_\_, \_\_\_–\_\_\_, \_\_\_–\_\_\_ (2008) (slip op., at 2–4, 11–13); *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133, 141, 143 (2000). And nothing in the statute's text indicates that Congress has carved out an exception to that rule for a subset of ADEA cases. Where the statutory text is "silent on the allocation of the burden of persuasion," we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer* v. *Weast*, 546 U. S. 49, 56 (2005); see also *Meacham* v. *Knolls Atomic Power Laboratory*, 554 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 6) ("Absent some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief" (internal quotation marks omitted)). We have no warrant to depart from the general rule in this setting.

Hence, the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision. See *Reeves*, *supra*, at 141–143, 147.[4]

─────────

even though other factors also motivated the practice," 42 U. S. C. §2000e–2(m) (emphasis added), but did not similarly amend the ADEA, see *supra*, at 5–6. We must give effect to Congress' choice. See *14 Penn Plaza LLC* v. *Pyett*, 556 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 21).

[4] Because we hold that ADEA plaintiffs retain the burden of persuasion to prove all disparate-treatment claims, we do not need to address whether plaintiffs must present direct, rather than circumstantial, evidence to obtain a burden-shifting instruction. There is no height-

### III

Finally, we reject petitioner's contention that our interpretation of the ADEA is controlled by *Price Waterhouse*, which initially established that the burden of persuasion shifted in alleged mixed-motives Title VII claims.[5]  In any event, it is far from clear that the Court would have the same approach were it to consider the question today in the first instance.  Cf. *14 Penn Plaza LLC* v. *Pyett,* 556 U. S. ___, ___ (2009) (slip op., at 21) (declining to "introduc[e] a qualification into the ADEA that is not found in its text"); *Meacham*, *supra*, at ___ (slip op., at 16) (explaining that the ADEA must be "read . . . the way Congress wrote it").

————————

ened evidentiary requirement for ADEA plaintiffs to satisfy their burden of persuasion that age was the "but-for" cause of their employer's adverse action, see 29 U. S. C. §623(a), and we will imply none. "Congress has been unequivocal when imposing heightened proof requirements" in other statutory contexts, including in other subsections within Title 29, when it has seen fit.  See *Desert Palace, Inc.* v. *Costa,* 539 U. S. 90, 99 (2003); see also, *e.g.*, 25 U. S. C. §2504(b)(2)(B) (imposing "clear and convincing evidence" standard); 29 U. S. C. §722(a)(2)(A) (same).

[5] JUSTICE STEVENS also contends that we must apply *Price Waterhouse* under the reasoning of *Smith* v. *City of Jackson*, 544 U. S. 228 (2005).  See *post*, at 7.  In *Smith*, the Court applied to the ADEA its pre-1991 interpretation of Title VII with respect to disparate-impact claims despite Congress' 1991 amendment adding disparate-impact claims to Title VII but not the ADEA.  544 U. S., at 240.  But the amendments made by Congress in this same legislation, which added the "motivating factor" language to Title VII, undermine JUSTICE STEVENS' argument.  Congress not only explicitly added "motivating factor" liability to Title VII, see *supra*, at 5–6, but it also partially abrogated *Price Waterhouse*'s holding by eliminating an employer's complete affirmative defense to "motivating factor" claims, see 42 U. S. C. §2000e–5(g)(2)(B).  If such "motivating factor" claims were already part of Title VII, the addition of §2000e–5(g)(2)(B) alone would have been sufficient.  Congress' careful tailoring of the "motivating factor" claim in Title VII, as well as the absence of a provision parallel to §2000e–2(m) in the ADEA, confirms that we cannot transfer the *Price Waterhouse* burden-shifting framework into the ADEA.

Whatever the deficiencies of *Price Waterhouse* in retrospect, it has become evident in the years since that case was decided that its burden-shifting framework is difficult to apply. For example, in cases tried to a jury, courts have found it particularly difficult to craft an instruction to explain its burden-shifting framework. See, *e.g.*, *Tyler* v. *Bethlehem Steel Corp.*, 958 F. 2d 1176, 1179 (CA2 1992) (referring to "the murky water of shifting burdens in discrimination cases"); *Visser* v. *Packer Engineering Associates, Inc.*, 924 F. 2d 655, 661 (CA7 1991) (en banc) (Flaum, J., dissenting) ("The difficulty judges have in formulating [burden-shifting] instructions and jurors have in applying them can be seen in the fact that jury verdicts in ADEA cases are supplanted by judgments notwithstanding the verdict or reversed on appeal more frequently than jury verdicts generally"). Thus, even if *Price Waterhouse* was doctrinally sound, the problems associated with its application have eliminated any perceivable benefit to extending its framework to ADEA claims. Cf. *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 47 (1977) (reevaluating precedent that was subject to criticism and "continuing controversy and confusion"); *Payne* v. *Tennessee*, 501 U. S. 808, 839–844 (1991) (SOUTER, J., concurring).[6]

––––––––––

[6] Gross points out that the Court has also applied a burden-shifting framework to certain claims brought in contexts other than pursuant to Title VII. See Brief for Petitioner 54–55 (citing, *inter alia*, *NLRB* v. *Transportation Management Corp.*, 462 U. S. 393, 401–403 (1983) (claims brought under the National Labor Relations Act (NLRA)); *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, 287 (1977) (constitutional claims)). These cases, however, do not require the Court to adopt his contra statutory position. The case involving the NLRA did not require the Court to decide in the first instance whether burden shifting should apply as the Court instead deferred to the National Labor Relation Board's determination that such a framework was appropriate. See *NLRB, supra*, at 400–403. And the constitutional cases such as *Mt. Healthy* have no bearing on the correct interpretation of ADEA

## IV

We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision. Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

―――――――――

claims, which are governed by statutory text.

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–441

———————

## JACK GROSS, PETITIONER *v.* FBL FINANCIAL SERVICES, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[June 18, 2009]

JUSTICE STEVENS, with whom JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

The Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. §621 *et seq.*, makes it unlawful for an employer to discriminate against any employee "because of" that individual's age, §623(a). The most natural reading of this statutory text prohibits adverse employment actions motivated in whole or in part by the age of the employee. The "but-for" causation standard endorsed by the Court today was advanced in JUSTICE KENNEDY's dissenting opinion in *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 279 (1989), a case construing identical language in Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e–2(a)(1). Not only did the Court reject the but-for standard in that case, but so too did Congress when it amended Title VII in 1991. Given this unambiguous history, it is particularly inappropriate for the Court, on its own initiative, to adopt an interpretation of the causation requirement in the ADEA that differs from the established reading of Title VII. I disagree not only with the Court's interpretation of the statute, but also with its decision to engage in unnecessary lawmaking. I would simply answer the question presented by the certiorari petition and hold that a plaintiff need not present direct evidence of age discrimination to obtain a mixed-motives instruction.

## I

The Court asks whether a mixed-motives instruction is ever appropriate in an ADEA case. As it acknowledges, this was not the question we granted certiorari to decide.[1] Instead, the question arose for the first time in respondent's brief, which asked us to "overrule *Price Waterhouse* with respect to its application to the ADEA." Brief for Respondent 26 (boldface type deleted). In the usual course, this Court would not entertain such a request raised only in a merits brief: "'We would normally expect notice of an intent to make so far-reaching an argument in the respondent's opposition to a petition for certiorari, cf. this Court's Rule 15.2, thereby assuring adequate preparation time for those likely affected and wishing to participate.'" *Alabama* v. *Shelton*, 535 U. S. 654, 660, n. 3 (2002) (quoting *South Central Bell Telephone Co.* v. *Alabama*, 526 U. S. 160, 171 (1999)). Yet the Court is unconcerned that the question it chooses to answer has not been briefed by the parties or interested *amici curiae*. Its failure to consider the views of the United States, which represents the agency charged with administering the ADEA, is especially irresponsible.[2]

Unfortunately, the majority's inattention to prudential Court practices is matched by its utter disregard of our precedent and Congress' intent. The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his com-

---

[1] "The question presented by the petitioner in this case is whether a plaintiff must present direct evidence of age discrimination in order to obtain a mixed-motives jury instruction in a suit brought under the [ADEA]." *Ante*, at 1.

[2] The United States filed an *amicus curiae* brief supporting petitioner on the question presented. At oral argument, the Government urged that the Court should not reach the issue it takes up today. See Tr. of Oral Arg. 20–21, 28–29.

pensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U. S. C. §623(a)(1) (emphasis added). As we recognized in *Price Waterhouse* when we construed the identical "because of" language of Title VII, see 42 U. S. C. §2000e–2(a)(1) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin" (emphasis added)), the most natural reading of the text proscribes adverse employment actions motivated in whole or in part by the age of the employee.

In *Price Waterhouse*, we concluded that the words "'because of' such individual's . . . sex . . . mean that gender must be irrelevant to employment decisions." 490 U. S., at 240 (plurality opinion); see also *id.*, at 260 (White, J., concurring in judgment). To establish a violation of Title VII, we therefore held, a plaintiff had to prove that her sex was a motivating factor in an adverse employment decision.[3] We recognized that the employer had an affirmative defense: It could avoid a finding of liability by proving that it would have made the same decision even if it had not taken the plaintiff's sex into account. *Id.*, at 244–245 (plurality opinion). But this affirmative defense did not alter the meaning of "because of." As we made clear, when "an employer considers both gender and legitimate factors at the time of making a decision, that decision was 'be-

———————

[3] Although Justice White stated that the plaintiff had to show that her sex was a "substantial" factor, while the plurality used the term "motivating" factor, these standards are interchangeable, as evidenced by Justice White's quotation of *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, 287 (1977): " '[T]he burden was properly placed upon [the plaintiff to show that the illegitimate criterion] was a "substantial factor"—or, *to put it in other words*, that it was a "motivating factor" ' " in the adverse decision. *Price Waterhouse*, 490 U. S., at 259 (emphasis added); see also *id.*, at 249 (plurality opinion) (using "substantial" and "motivating" interchangeably).

cause of* sex." *Id.*, at 241; see also *id.*, at 260 (White, J., concurring in judgment). We readily rejected the dissent's contrary assertion. "To construe the words 'because of' as colloquial shorthand for 'but-for' causation," we said, "is to misunderstand them." *Id.*, at 240 (plurality opinion).[4]

Today, however, the Court interprets the words "because of" in the ADEA "as colloquial shorthand for 'but-for' causation." *Ibid.* That the Court is construing the ADEA rather than Title VII does not justify this departure from precedent. The relevant language in the two statutes is identical, and we have long recognized that our interpretations of Title VII's language apply "with equal force in the context of age discrimination, for the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII.'" *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 121 (1985) (quoting *Lorillard* v. *Pons*, 434 U. S. 575, 584 (1978)). See generally *Northcross* v. *Board of Ed. of Memphis City Schools*, 412 U. S. 427, 428 (1973) *(per curiam)*. For this reason, JUSTICE KENNEDY's dissent in *Price Waterhouse* assumed the plurality's mixed-motives framework extended to the ADEA, see 490 U. S., at 292, and the Courts of Appeals to have considered the issue unanimously have applied *Price Waterhouse* to ADEA claims.[5]

---

[4] We were no doubt aware that dictionaries define "because of" as "by reason of" or "on account of." *Ante*, at 7–8. Contrary to the majority's bald assertion, however, this does not establish that the term denotes but-for causation. The dictionaries the Court cites do not, for instance, define "because of" as "*solely* by reason of" or "*exclusively* on account of." In *Price Waterhouse*, we recognized that the words "because of" do not mean "*solely* because of," and we held that the inquiry "commanded by the words" of the statute was whether gender was a motivating factor in the employment decision. 490 U. S., at 241 (plurality opinion).

[5] See *Febres* v. *Challenger Caribbean Corp.*, 214 F. 3d 57 (CA1 2000); *Ostrowski* v. *Atlantic Mut. Ins. Cos.*, 968 F. 2d 171 (CA2 1992); *Starceski* v. *Westinghouse Elec. Corp.*, 54 F. 3d 1089 (CA3 1995); *EEOC* v. *Warfield-Rohr Casket Co.*, 364 F. 3d 160 (CA4 2004); *Rachid* v. *Jack*

The Court nonetheless suggests that applying *Price Waterhouse* would be inconsistent with our ADEA precedents. In particular, the Court relies on our statement in *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604, 610 (1993), that "[a disparate-treatment] claim 'cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process *and had a determinative influence on the outcome.*'" *Ante*, at 8. The italicized phrase is at best inconclusive as to the meaning of the ADEA's "because of" language, however, as other passages in *Hazen Paper Co.* demonstrate. We also stated, for instance, that the ADEA "requires the employer to *ignore* an employee's age," *id.*, at 612 (emphasis added), and noted that "[w]hen the employer's decision is *wholly motivated* by factors other than age," there is no violation, *id.*, at 611 (emphasis altered). So too, we indicated the "possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status," *id.*, at 613—a classic mixed-motives scenario.

Moreover, both *Hazen Paper Co.* and *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133 (2000), on which the majority also relies, support the conclusion that the ADEA should be interpreted consistently with Title VII. In those non-mixed-motives ADEA cases, the Court followed the standards set forth in non-mixed-motives Title VII cases including *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), and *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248 (1981). See, *e.g.*, *Reeves*, 530 U. S., at 141–143; *Hazen Paper Co.*, 507 U. S.,

———————

*In The Box, Inc.*, 376 F. 3d 305 (CA5 2004); *Wexler* v. *White's Fine Furniture, Inc.*, 317 F. 3d 564 (CA6 2003); *Visser* v. *Packer Eng. Assocs., Inc.*, 924 F. 2d 655 (CA7 1991) (en banc); *Hutson* v. *McDonnell Douglas Corp.*, 63 F. 3d 771 (CA8 1995); *Lewis* v. *YMCA*, 208 F. 3d 1303 (CA11 2000) *(per curiam);* see also *Gonzagowski* v. *Widnall*, 115 F. 3d 744, 749 (CA10 1997).

at 610. This by no means indicates, as the majority reasons, that *mixed-motives* ADEA cases should follow those standards. Rather, it underscores that ADEA standards are generally understood to conform to Title VII standards.

## II

The conclusion that "because of" an individual's age means that age was a motivating factor in an employment decision is bolstered by Congress' reaction to *Price Waterhouse* in the 1991 Civil Rights Act. As part of its response to "a number of recent decisions by the United States Supreme Court that sharply cut back on the scope and effectiveness of [civil rights] laws," H. R. Rep. No. 102–40, pt. 2, p. 2 (1991) (hereinafter H. R. Rep.), Congress eliminated the affirmative defense to liability that *Price Waterhouse* had furnished employers and provided instead that an employer's same-decision showing would limit only a plaintiff's remedies. See §2000e–5(g)(2)(B). Importantly, however, Congress ratified *Price Waterhouse*'s interpretation of the plaintiff's burden of proof, rejecting the dissent's suggestion in that case that but-for causation was the proper standard. See §2000e–2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice").

Because the 1991 Act amended only Title VII and not the ADEA with respect to mixed-motives claims, the Court reasonably declines to apply the amended provisions to the ADEA.[6] But it proceeds to ignore the conclusion com-

---

[6] There is, however, some evidence that Congress intended the 1991 mixed-motives amendments to apply to the ADEA as well. See H. R. Rep., pt. 2, at 4 (noting that a "number of other laws banning discrimination, including . . . the Age Discrimination in Employment Act (ADEA), 29 U. S. C. §621, et seq., are modeled after and have been

pelled by this interpretation of the Act: *Price Waterhouse*'s construction of "because of" remains the governing law for ADEA claims.

Our recent decision in *Smith* v. *City of Jackson*, 544 U. S. 228, 240 (2005), is precisely on point, as we considered in that case the effect of Congress' failure to amend the disparate-impact provisions of the ADEA when it amended the corresponding Title VII provisions in the 1991 Act. Noting that "the relevant 1991 amendments expanded the coverage of Title VII [but] did not amend the ADEA or speak to the subject of age discrimination," we held that "*Wards Cove*'s pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA." 544 U. S., at 240 (discussing *Wards Cove Packing Co.* v. *Atonio*, 490 U. S. 642 (1989)); see also *Meacham* v. *Knolls Atomic Power Laboratory*, 554 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 15). If the *Wards Cove* disparate-impact framework that Congress flatly repudiated in the Title VII context continues to apply to ADEA claims, the mixed-motives framework that Congress substantially endorsed surely applies.

Curiously, the Court reaches the opposite conclusion, relying on Congress' partial ratification of *Price Waterhouse* to argue against that case's precedential value. It reasons that if the 1991 amendments do not apply to the ADEA, *Price Waterhouse* likewise must not apply because Congress effectively codified *Price Waterhouse*'s holding in the amendments. *Ante*, at 5–6. This does not follow. To the contrary, the fact that Congress endorsed this Court's interpretation of the "because of" language in *Price Waterhouse* (even as it rejected the employer's affirmative de-

―――――――

interpreted in a manner consistent with Title VII," and that "these other laws modeled after Title VII [should] be interpreted consistently in a manner consistent with Title VII as amended by this Act," including the mixed-motives provisions).

fense to liability) provides all the more reason to adhere to that decision's motivating-factor test. Indeed, Congress emphasized in passing the 1991 Act that the motivating-factor test was consistent with its original intent in enacting Title VII. See, *e.g.*, H. R. Rep., pt. 2, at 17 ("When enacting the Civil Rights Act of 1964, Congress made clear that it intended to prohibit all invidious consideration of sex, race, color, religion, or national origin in employment decisions"); *id.*, at 2 (stating that the Act "reaffirm[ed] that any reliance on prejudice in making employment decisions is illegal"); see also H. R. Rep., pt. 1, at 45; S. Rep. No. 101–315, pp. 6, 22 (1990).

The 1991 amendments to Title VII also provide the answer to the majority's argument that the mixed-motives approach has proved unworkable. *Ante*, at 10–11. Because Congress has codified a mixed-motives framework for Title VII cases—the vast majority of antidiscrimination lawsuits—the Court's concerns about that framework are of no moment. Were the Court truly worried about difficulties faced by trial courts and juries, moreover, it would not reach today's decision, which will further complicate every case in which a plaintiff raises both ADEA and Title VII claims.

The Court's resurrection of the but-for causation standard is unwarranted. *Price Waterhouse* repudiated that standard 20 years ago, and Congress' response to our decision further militates against the crabbed interpretation the Court adopts today. The answer to the question the Court has elected to take up—whether a mixed-motives jury instruction is ever proper in an ADEA case— is plainly yes.

## III

Although the Court declines to address the question we granted certiorari to decide, I would answer that question by following our unanimous opinion in *Desert Palace, Inc.*

v. *Costa*, 539 U. S. 90 (2003). I would accordingly hold that a plaintiff need not present direct evidence of age discrimination to obtain a mixed-motives instruction.

The source of the direct-evidence debate is Justice O'Connor's opinion concurring in the judgment in *Price Waterhouse*. Writing only for herself, Justice O'Connor argued that a plaintiff should be required to introduce "direct evidence" that her sex motivated the decision before the plurality's mixed-motives framework would apply. 490 U. S., at 276.[7] Many courts have treated Justice O'Connor's opinion in *Price Waterhouse* as controlling for both Title VII and ADEA mixed-motives cases in light of our statement in *Marks* v. *United States*, 430 U. S. 188, 193 (1977), that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Unlike the cases *Marks* addressed, however, *Price Waterhouse* garnered five votes for a single rationale: Justice White agreed with the plurality as to the motivating-factor test, see *supra*, at 3, n. 3; he disagreed only as to the type of evidence an employer was required to submit to prove that the same result would have occurred absent the unlawful motivation. Taking the plurality to demand objective evidence, he wrote separately to express his view that an employer's credible testimony could suffice. 490 U. S., at 261. Because Justice White provided a fifth vote for the "rationale explaining the result" of the *Price Waterhouse* decision, *Marks*, 430 U. S., at 193, his concur-

---

[7] While Justice O'Connor did not define precisely what she meant by "direct evidence," we contrasted such evidence with circumstantial evidence in *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90 (2003). That Justice O'Connor might have intended a different definition does not affect my conclusion, as I do not believe a plaintiff is required to introduce any special type of evidence to obtain a mixed-motives instruction.

rence is properly understood as controlling, and he, like the plurality, did not require the introduction of direct evidence.

Any questions raised by *Price Waterhouse* as to a direct evidence requirement were settled by this Court's unanimous decision in *Desert Palace*, in which we held that a plaintiff need not introduce direct evidence to meet her burden in a mixed-motives case under Title VII, as amended by the Civil Rights Act of 1991. In construing the language of §2000e–2(m), we reasoned that the statute did not mention, much less require, a heightened showing through direct evidence and that "Congress has been unequivocal when imposing heightened proof requirements." 539 U. S., at 99. The statute's silence with respect to direct evidence, we held, meant that "we should not depart from the '[c]onventional rul[e] of civil litigation . . . [that] requires a plaintiff to prove his case by a preponderance of the evidence', . . . using 'direct or circumstantial evidence.'" *Ibid.* (quoting *Price Waterhouse*, 490 U. S., at 253 (plurality opinion), and *Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711 (1983)). We also recognized the Court's consistent acknowledgment of the utility of circumstantial evidence in discrimination cases.

Our analysis in *Desert Palace* applies with equal force to the ADEA. Cf. *ante*, at 9–10, n. 4. As with the 1991 amendments to Title VII, no language in the ADEA imposes a heightened direct evidence requirement, and we have specifically recognized the utility of circumstantial evidence in ADEA cases. See *Reeves*, 530 U. S., at 147 (cited by *Desert Palace*, 539 U. S., at 99–100). Moreover, in *Hazen Paper Co.*, we held that an award of liquidated damages for a "willful" violation of the ADEA did not require proof of the employer's motivation through direct evidence, 507 U. S., at 615, and we have similarly rejected the imposition of special evidentiary rules in other ADEA cases. See, *e.g.*, *Swierkiewicz* v. *Sorema N. A.*, 534 U. S.

506 (2002); *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U. S. 308 (1996). *Desert Palace* thus confirms the answer provided by the plurality and Justice White in *Price Waterhouse:* An ADEA plaintiff need not present direct evidence of discrimination to obtain a mixed-motives instruction.

## IV

The Court's endorsement of a different construction of the same critical language in the ADEA and Title VII is both unwise and inconsistent with settled law. The but-for standard the Court adopts was rejected by this Court in *Price Waterhouse* and by Congress in the Civil Rights Act of 1991. Yet today the Court resurrects the standard in an unabashed display of judicial lawmaking. I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

No. 08–441

## JACK GROSS, PETITIONER *v.* FBL FINANCIAL SERVICES, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[June 18, 2009]

JUSTICE BREYER, with whom JUSTICE SOUTER and JUSTICE GINSBURG join, dissenting.

I agree with JUSTICE STEVENS that mixed-motive instructions are appropriate in the Age Discrimination in Employment Act context. And I join his opinion. The Court rejects this conclusion on the ground that the words "because of" require a plaintiff to prove that age was the "but-for" cause of his employer's adverse employment action. *Ante*, at 7. But the majority does not explain why this is so. The words "because of" do not inherently require a showing of "but-for" causation, and I see no reason to read them to require such a showing.

It is one thing to require a typical tort plaintiff to show "but-for" causation. In that context, reasonably objective scientific or commonsense theories of physical causation make the concept of "but-for" causation comparatively easy to understand and relatively easy to apply. But it is an entirely different matter to determine a "but-for" relation when we consider, not physical forces, but the mind-related characterizations that constitute motive. Sometimes we speak of *determining* or *discovering* motives, but more often we *ascribe* motives, after an event, to an individual in light of the individual's thoughts and other circumstances present at the time of decision. In a case where we characterize an employer's actions as having

been taken out of multiple motives, say, both because the employee was old and because he wore loud clothing, to apply "but-for" causation is to engage in a hypothetical inquiry about what would have happened if the employer's thoughts and other circumstances had been different. The answer to this hypothetical inquiry will often be far from obvious, and, since the employee likely knows less than does the employer about what the employer was thinking at the time, the employer will often be in a stronger position than the employee to provide the answer.

All that a plaintiff can know for certain in such a context is that the forbidden motive did play a role in the employer's decision. And the fact that a jury has found that age did play a role in the decision justifies the use of the word "because," *i.e.*, the employer dismissed the employee because of his age (and other things). See *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 239–242 (1989) (plurality opinion). I therefore would see nothing wrong in concluding that the plaintiff has established a violation of the statute.

But the law need not automatically assess liability in these circumstances. In *Price Waterhouse*, the plurality recognized an affirmative defense where the defendant could show that the employee would have been dismissed regardless. The law permits the employer this defense, not because the forbidden motive, age, had no role in the *actual* decision, but because the employer can show that he would have dismissed the employee anyway in the *hypothetical* circumstance in which his age-related motive was absent. And it makes sense that this would be an affirmative defense, rather than part of the showing of a violation, precisely because the defendant is in a better position than the plaintiff to establish how he would have acted in this hypothetical situation. See *id.*, at 242; cf. *ante*, at 6 (STEVENS, J., dissenting) (describing the Title VII framework). I can see nothing unfair or impractical

about allocating the burdens of proof in this way.

The instruction that the District Court gave seems appropriate and lawful. It says, in pertinent part:

> "Your verdict must be for plaintiff if all the following elements have been proved by the preponderance of the evidence:
>
> .          .          .          .          .
>
> "[The] plaintiff's age was a motivating factor in defendant's decision to demote plaintiff.
>
> "However, your verdict must be for defendant . . . if it has been proved by the preponderance of the evidence that defendant would have demoted plaintiff regardless of his age.
>
> .          .          .          .          .
>
> "As used in these instructions, plaintiff's age was 'a motivating factor,' if plaintiff's age played a part or a role in the defendant's decision to demote plaintiff. However, plaintiff's age need not have been the only reason for defendant's decision to demote plaintiff." App. 9–10.

For these reasons as well as for those set forth by JUSTICE STEVENS, I respectfully dissent.