[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14559
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cv-00083-WLS


VICKI WASHINGTON,

Plaintiff-Counter Defendant-Appellant,

versus

UNITED PARCEL SERVICE, INC.,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 27, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

I.

From March 2005 to September 2006, Vicki Washington was Manger of the United Parcel Service, Inc. ("UPS") Package Center in Cairo, Georgia, the highest ranking employee at the Package Center.   As Manager, Washington was responsible for ensuring that the time worked by the hourly employees was properly recorded in UPS's time-keeping system.  That is, she and the supervisors working under her direction were responsible for reviewing the hourly employees' timecards, editing the timecards to correct any errors, and approving the timecards before they were submitted to the Payroll Department for processing.[1]

During the fall of 2006, UPS commenced an investigation into suspicious activity in the Cairo Package Center involving improper edits to employee timecards.  At that time, Washington was away from work on a leave of absence and thus was not interviewed as part of UPS's investigation.  The investigation revealed that several management employees in the Center had been making improper timecard edits to boost the center's productivity numbers.  In particular, the system was manipulated to shift time that employees had worked in package

---

[1] The hourly employee tasks were assigned different numerical codes in UPS's time-keeping system, e.g., time spent loading packages was coded as "42," time spent performing car wash duties was coded as "58," and time spent on "porter" duties was coded as "56."  The use of the codes allowed UPS to assess the overall operational productivity of a particular package center by examining time spent on different work tasks.

loading operational standpoint, to car wash and porter activities, which were not included in the operational statistics used to measure the center's productivity. When Washington returned to work in March 2007 following her leave of absence, UPS conducted a follow-up investigation to ascertain whether she was involved in the improper timecard edits that had taken place. The investigation revealed wrongdoing on her part, including pressuring an employee not to file a union grievance and asking an employee not to take premium pay under the terms of the UPS's collective bargaining agreement with the union.

UPS, acting on a consensus decision by four of its officials, terminated Washington's employment based on five categories of misconduct, which included making improper timecard edits, lying to investigators, and instructing other managers under her supervision to manipulate records. She appealed her termination through a peer dispute resolution process, but a panel of her peers, two of whom she had selected, recommended that the termination be upheld.

Washington thereafter brought this lawsuit against UPS alleging that UPS discharged her due to her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.S. § 621 *et seq.*, because it regarded her as disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and in retaliation for reporting unlawful employment practices at UPS. Following discovery, the District Court granted UPS's motion for summary

judgment.  She appeals, arguing that the court erred in granting summary judgment on her discrimination claims because she pointed to numerous comparators to support her *prima facie* case for age discrimination, and because it failed to credit her evidence demonstrating that UPS perceived her as disabled.  She also argues that UPS's legitimate,  non-discriminatory reasons for terminating her were pretextual.  We find no error and affirm.[2]

## II.

Under the ADEA, an employer may not discriminate or retaliate on the basis of age against an employee who is at least 40 years old.  29 U.S.C. §§ 623(a), (d), 631(a).  In proving an age discrimination claim, the plaintiff may establish a *prima facie* case either by showing direct evidence of discrimination or by indirect evidence.  *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  "Indirect evidence is circumstantial evidence." *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

---

[2]  We do so after considering the evidence in the light most favorable to the nonmoving party, Washington.  *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785 (11th Cir. 2005).

We have adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas*, for circumstantial evidence cases arising under the ADEA. *See Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 566 (11th Cir. 1992). In order to make out a *prima facie* case for an ADEA violation, the plaintiff may show that she (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, *see Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989), and (4) was replaced by a younger individual, or that her employer treated employees who were not members of her protected class more favorably under similar circumstances. *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2005).

In order to make a valid comparison, the plaintiff must show that she and the comparators are similarly situated in all relevant respects. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct. *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). To prevent courts from second guessing employers' reasonable employment decisions, we require that the quantity and quality of the comparator's misconduct be "nearly identical" to the plaintiff's. *Id.* A plaintiff may, however, withstand summary judgment even in the absence of an

5

adequate comparator if she presents "a convincing mosaic of circumstantial evidence" that would allow a reasonable jury "to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Under the *McDonnell Douglas* framework, if a plaintiff establishes a *prima facie* case of discrimination, and the defendant proffers a legitimate, nondiscriminatory reason for taking the challenged employment action, the plaintiff must then demonstrate that the proffered reason was a pretext for discrimination. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272-73 (11th Cir. 2002). Ultimately, for claims brought under the ADEA, the plaintiff must prove that age was the "but for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009) (disparate treatment context).

We find no error in the District Court's conclusion that Washington's comparators were inadequate to establish a *prima facie* case of age discrimination. Ten of the comparators (including her replacement) were within her protected class, i.e. individuals 40 years of age or older, at the time she was terminated. Accordingly, she failed to demonstrate that these comparators were outside of her protected class, and they should be ignored. *Morris*, 402 F.3d at 1083. She failed to provide job information for four more comparators, and thus they also cannot be

considered to be similarly situated due to a lack of sufficient information. *Morris*, 402 F.3d at 1083. Two other individuals were fired for integrity issues, and therefore were not treated differently than Washington. *Holifield*, 115 F.3d at 1562. None of the five remaining comparators were at the same level in the organization, as all of them were supervisors at a UPS facility, not center managers. Accordingly, she failed to demonstrate that these comparators bore the same responsibilities as her in their lower positions. *Holifield*, 115 F.3d at 1562.

Additionally, Washington's alleged misconduct consisted of more than falsely reporting the hours and nature of her employees' work, as she also lied to investigators, instructed the supervisors working for her to falsify timecards, pressured an employee not to file a grievance against her, and pressured an employee into not taking overtime pay. None of the misconduct she alleged the remaining comparators committed comes close to her misconduct in quantity or quality; therefore they cannot be considered proper comparators. *Maniccia*, 171 F.3d at 1368-69.

Washington's failure to present a sufficient comparator was not necessarily fatal to her ADEA claim, however, as she could still have survived summary judgment if she had presented a sufficiently persuasive "mosaic of circumstantial evidence" that would allow a reasonable jury "to infer intentional discrimination by the decisionmaker[s]." *Smith*, 644 F.3d at 1328. She did not offer any

7

evidence, beyond unsubstantiated allegations, that her age was the "but for" cause of her termination, as, most notably, she was replaced by someone less than a year younger than her.  *Gross*, 557 U.S. at 180, 129 S.Ct. at 2352.  Thus, given the absence of any evidence of discrimination, the court did not err when it concluded that Washington failed to establish a *prima facie* case of age discrimination.  In light of this holding, we need not address her pretext argument.

### III.

We also analyze ADA discrimination claims under the *McDonnell Douglas* burden-shifting framework.. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  To establish a *prima facie* case under the ADA, a plaintiff may show that (1) she was disabled, (2) she was qualified to perform the job, and (3) she was subjected to an adverse employment action because of her disability. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). As with ADEA claims, if the plaintiff meets her burden, and the defendant presents a legitimate, non-discriminatory reason for its actions, the plaintiff may then demonstrate that the reason given was a pretext for disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).

The ADA holds that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

8

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such impairment, or (3) being regarded as having an impairment. 42 U.S.C. § 12102(1); *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1215 (11th Cir. 2004). According to the Equal Employment Opportunity Commission regulations that were in effect at the time of Washington's termination, to be "regarded as having such an impairment means that an individual:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l) (2007). Thus, an employer "runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1228 (11th Cir. 2005) (quotation omitted).

Washington did not claim that she was actually disabled; rather, she bases her disability discrimination claim on UPS's alleged perception that she was

disabled by stress.  She argues that one individual (Kathi Murray) told Charlie Sheffield, a supervisor at the Cairo Package Center, that she did not believe that Washington was actually disabled, but that, if she came back to work from leave, she would go out on leave again shortly thereafter or quit, demonstrated that UPS perceived her as being disabled.  As the court noted in its dispositive order, a plain reading of the individual's entire statement indicates that, although the individual believed that Washington would not remain the Manager of the Cairo Package Center, she did not believe that Washington was actually disabled at all.  Though Washington argued that most or all of the decisionmakers were aware of her stress problems, she did not offer any evidence that these decisionmakers also considered her to be disabled such that she was substantially limited in major activities.  29 C.F.R. § 1630.2(l) (2007).  Accordingly, the court did not err when it found that she failed to establish a *prima facie* case of disability discrimination.  Since she failed to do that, we need not address her pretext argument.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.