*758 OPINION OF THE COURT
SCIRICA, Chief Judge.
In June 2006, plaintiff Robert Connolly was fired from his position with defendant Bottling Group, LLC d/b/a The Pepsi Bottling Group (“PBG”). He was 52 years old at the time. Plaintiff brought suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 — 634, alleging he was fired because of his age. The District Court granted summary judgment for defendant, and plaintiff appeals. We will affirm.
As we write primarily for the parties, we need not recount in full the factual and procedural history of this case, which is set forth by the court below. See Connolly v. Pepsi Bottling Group, L.L.C., Civ. A. No. 06-1462, 2008 WL 4412090 (W.D.Pa. Sept.22, 2008). Plaintiff began work with defendant in 1972. As of February 2004, he held the position of Key Account Manager. In this capacity, he was assigned “third-party operator” customer accounts to manage, including that of the University of Pittsburgh Medical Center (“UPMC”). On June 19, 2006, defendant terminated plaintiffs employment. Shortly thereafter, defendant chose Robert Haig, then 47 years old, to fill plaintiffs former position.
According to defendant, plaintiff was terminated because he violated defendant’s Code of Conduct in his management of the UPMC account — particularly, those provisions of the code pertaining to business integrity, conflicts of interest, and business gifts. In 2002, plaintiff and Bill O’Connor, director of corporate purchasing for UPMC at the time, were involved in renegotiating the contract between defendant and UPMC. As UPMC and defendant would later learn, plaintiff and O’Connor signed two different versions of this renegotiated contract on December 11, 2002, one of which was thereafter held by defendant and the other by UPMC; neither UPMC nor defendant had the other’s version on record. These two versions contained materially different terms — for instance, the version held by defendant contained a clause providing for $175,000 in yearly “Special Event Support” marketing funds that defendant would make available to UPMC, while the version held by UPMC did not.
UPMC became aware of this situation in May 2006, when plaintiff, during a meeting with Bob Cutone (the individual who had assumed responsibility for the contract at UPMC[1]), told Cutone that the version of the contract held by UPMC was incorrect and gave him the version held by defendant. Cutone informed plaintiff that UPMC had no record of this other version of the contract. Subsequently, Cutone’s supervisor notified defendant that UPMC had serious concerns regarding its relationship with defendant and that UPMC was investigating certain marketing fund expenditures made by defendant on UPMC’s behalf while O’Connor was still with UPMC — expenditures which plaintiff authorized and which, as noted above, were not provided for in UPMC’s version of the contract. These expenditures included the purchase of a crew boat for the high school rowing program of which O’Connor’s son had been a member, and of season tickets to the Pittsburgh Steelers. In June 2006, UPMC arranged a meeting with plaintiffs supervisor to discuss this situation and asked that plaintiff not attend. At this meeting, UPMC apprised defendant of the differences between the two versions of the contracts; plaintiff had not notified defendant of the existence of the different versions prior to this meeting. When subsequently asked by defendant to explain the existence of the two versions of the contract, plaintiff offered multiple incomplete and contradictory re *759 sponses. One week after its meeting with UPMC, defendant terminated plaintiffs employment.
Plaintiff filed suit against defendant, claiming it fired him because of his age in violation of the ADEA Plaintiff pointed to the following evidence to substantiate his claim of discrimination: comments made over the course of his last two years of employment with defendant by two of his supervisors, Bill Dillon and Lisa Sarneso, who were both involved in the termination decision;[2] a handwritten notation indicating plaintiffs birth date and age that was made on plaintiffs computer-generated personnel profile by Patrick Flynn, another individual involved in the termination decision, shortly before that decision;[3] Dillon’s issuance of a “below target” performance evaluation to plaintiff in October 2005, the first that plaintiff had received in his time working for defendant, and plaintiffs consequent placement on a performance improvement plan; and the timing of the hiring of plaintiffs replacement. According to plaintiff, defendant’s reliance on its Code of Conduct in its termination decision was simply a pretext for its actual, discriminatory motivation.
Defendant filed a motion for summary judgment. The District Court, applying the McDonnell Douglas burden-shifting framework to analyze plaintiffs claim, found that plaintiff had made a prima facie showing of discrimination: namely, that plaintiff was a member of a class protected under the ADEA, was qualified, suffered an adverse employment action, and was replaced by someone sufficiently younger to raise an inference of discrimination. The court also found defendant had met its burden of producing a legitimate nondiscriminatory reason for its termination of plaintiff — his entry “into two materially different contracts with the same customer on the same day, giving rise to an appearance of impropriety, and his multiple, incomplete and contradictory explanations when questioned about the two contracts.” The court noted that “[n]ot only did this conduct arguably violate the conflicts of interest and business gifts and payments subsections of the conducting business with integrity section of defendant’s code of conduct, it also put into jeopardy defendant’s business relationship with a major account.” Lastly, the court determined plaintiff had failed to put forth evidence that, when viewed in the light most favorable to him, would permit a reasonable factfinder to conclude that defendant’s proffered reason was pretextual and that plaintiff had been unlawfully discriminated against. Accordingly, the court granted defendant’s motion for summary judgment. This timely appeal followed.[4]
*760 The ADEA prohibits employers from discriminating against “any individual ... because of such individual’s age.” 29 U.S.C. § 623(a)(1). “[A] plaintiff bringing a disparate-treatment claim pursuant to the ANEA must prove, by a preponderance of the evidence, that age was the ‘but-for’ cause of the challenged adverse employment action.” Gross v. FBL Fin. Servs., Inc., — U.S. -, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009).[5]
On appeal, plaintiff does not challenge the District Court’s finding that, under the McDonnell Douglas framework, defendant has met its burden of producing a legitimate nondiseriminatory reason for its decision to terminate him. Plaintiff claims, however, that he has put forth sufficient evidence to discredit defendant’s proffered reason as pretextual and to defeat defendant’s motion for summary judgment. We disagree. First, we do not believe plaintiff has “demonstrate^ such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them ‘unworthy of credence.’ ” Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir.1997) (en banc) (quotation marks omitted) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994)). As the District Court noted, “here there is substantial undisputed evidence of record that supports defendant’s proffered reason for plaintiffs termination,” namely, “1) [plaintiff] signed two different versions of the PBG/UPMC Contract on the same day, ... 2) he never told his supervisors about the two different versions until after UPMC brought the issue to PBG’s attention, 3) UPMC representatives were upset with Connolly, and 4) Connolly gave PBG representatives multiple, incomplete and contradictory answers to questions about why two different versions existed.” Plaintiff points to evidence, such as statements made by O’Con-nor in his 2007 deposition, that lends insight into the circumstances surrounding the two contracts, the marketing fund expenditures, and aspects of plaintiffs conduct with respect to them, but as the District Court found, there is no indication that any of this information was available to defendant when it made its termination decision. Plaintiff also claims defendant has changed its proffered reasons for his termination, thereby undermining their legitimacy, but we fail to see any such inconsistency. Nor do we agree with plaintiff that defendant has failed to demonstrate adequately how plaintiffs entry into two different contracts, his authorization of expenditures that were not provided for in UPMC’s version of the contract and that seemingly inured to O’Connor’s personal benefit, and his failure to bring this situation to defendant’s attention and provide a credible explanation for it, implicate defendant’s Code of Conduct, particularly in light of the information available to defendant at the time of the termination decision.
We also agree with the District Court that the evidence offered by plaintiff to support his claim of discrimination “laek[s] probative force in light of the undisputed evidence of record relating to the stated bases for the termination.” Plaintiff claims the District Court failed to accord the comments made by Dillon and Sarneso, and the age notation made by Flynn, *761 sufficient weight. As the District Court recognized, Dillon and Sarneso’s comments do not all suggest potential age-related bias, and those that might were made months before defendant’s decision to terminate plaintiff and outside the context of that decisionmaking process. See Fuentes, 82 F.3d at 767 (“ ‘Stray remarks by nondecisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.’ ” (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir.1992))). The age notation on plaintiffs personnel profile indicates that individuals involved in the termination decision were aware of plaintiffs age at the time of that decision. The notation does not, in itself, manifest discriminatory animus, though it may be relevant to such a showing when considered in light of other evidence. See, e.g., Armbruster v. Unisys Corp., 32 F.3d 768, 783 (3d Cir.1994). We do not believe, however, that the evidence presented in this case, considered as a whole, is sufficiently probative to save plaintiffs ADEA claim from summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.” (citations omitted)).. That is, when we view all of the evidence in the light most favorable to plaintiff, we do not believe a reasonable factfinder could conclude that plaintiff, given his conduct with respect to the UPMC contract and given the information available to defendant at the time of its termination decision, would not have been terminated but for his age. See Gross, 129 S.Ct. at 2352.[6] Aceordingly, we will affirm the judgment of the District Court.

. UPMC terminated O’Connor’s employment in October 2005.

.According to plaintiff, Dillon (1) called plaintiff "the old man in the group" in March 2005 during their first meeting, (2) said to plaintiff in November or December 2005, "Listen, old man, I know you're lying to me,” and (3) called plaintiff a “legacy liability” and said that he "could hire two or three people for what [plaintiff] made” during a meeting on February 3, 2006; and Sarneso (1) told plaintiff during a meeting sometime in 2005 that "the job has passed [you] by” and that "younger key account managers can work rings around you,” and (2) told plaintiff during a meeting on June 14, 2005 that he "did not fit the mold for a trainer.”

. According to Flynn, the notation was made because plaintiff's age was relevant to the severance package that would be offered to plaintiff; plaintiff disputes this explanation, contending knowledge of plaintiff's exact age was not necessary to defendant's severance-package assessment.

. The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court’s grant of summary judgment, and we review the facts in the light most favorable to the non-movant, plaintiff in this case. Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir.2009). "The judgment sought should be rendered if the pleadings, *760 the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [defendant is] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

. "An act or omission is not regarded as a cause of an event if the particular event would have occurred without it.” Gross, 129 S.Ct. at 2350 (quotation marks and citation omitted).

. In light of this determination, we need not reach defendant's contention that the District Court erred in concluding plaintiff's replacement was sufficiently younger than plaintiff to raise an inference of discrimination at the prima facie stage of the McDonnell Douglas framework.