Barry J. HEILMAN, Appellant

v.

ALLEGHENY ENERGY SERVICE
CORPORATION.

No. 08–4523.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
L.A.R. 34.1(a) Oct. 27, 2009.

Filed: Nov. 12, 2009.

Neal A. Sanders, Esq., Law Offices of
Neal Alan Sanders, Butler, PA, for Appel-
lant.

Michael D. Kabat, Esq., Wargo &
French, Atlanta, GA, for Appellee.

Before: SMITH, FISHER, and
STAPLETON, Circuit Judges.

OPINION

SMITH, Circuit Judge.

In this employment discrimination ac-
tion, we are asked to review the District

intervene claim or for Cooper on the exces-  sive force claim.

Court's grant of summary judgment against an employee after his employer denied his request for a transfer. The District Court held that the employee failed to make out a prima facie case of age discrimination and, in the alternative, that he failed to offer any evidence to discredit the employer's non-discriminatory reason for its decision or to show that a discriminatory reason more likely motivated it. For the reasons that follow, we will affirm the judgment of the District Court.

## I.

Appellee Allegheny Energy Services Corporation ("Allegheny") provides power to residential and commercial customers in Ohio, West Virginia, Pennsylvania, Maryland, and Virginia. Appellant Barry Heilman began his employment with Allegheny in 1973 at the age of 19. He progressed up the ranks and now works as a lead lineman at the Kittanning Service Center. He is a member of Local Union No. 102 of the Utility Workers Union of America and was at times relevant to this case over the age of 40.

On March 14, 2006, Allegheny posted two vacancies for weekend lead lineman positions at its Arnold Service Center. The positions came with a residency requirement: linemen and servicemen at the Arnold Service Center, just like all linemen and servicemen at Allegheny's locations throughout Pennsylvania, had to live within a 30–minute drive of their service center. Because linemen and servicemen are often called out to remedy power outages, Allegheny requires them to live within this range to ensure a quick response when called.

Heilman resides, and at the time of his bidding resided, in Ford City, Pennsylvania. The Arnold Service Center is located in Arnold, Pennsylvania. Before he bid, Heilman did not time his commute, but he believed, based on his longtime familiarity with the area, that he lived within a 30–minute drive of the Arnold Service Center. Heilman and others bid for the positions, and he and Michael Wright, another lead lineman from Kittanning, were awarded the positions. Allegheny had no discretion in awarding the positions, as Heilman and Wright were the senior-most Union members bidding. Heilman began his new position with a 6–month probationary period, which, among other things, allows time for a lineman or serviceman to move his residence if he resides outside the 30–minute range.

The time of Heilman's commute became an issue at a safety meeting held three to four months after he began at the Arnold Service Center.[1] Two of his superiors, on two separate occasions, each tested the commute between Heilman's residence and the Arnold Service Center. They clocked the commute at 54, 40, 34, and 33 minutes. The last was on a route suggested by Heilman. During this time, the Local 102 Vice President also tested the commute, and he clocked it at 38 minutes. Heilman was informed that he did not meet the residency requirement and that he would have to return to his lead lineman position at the Kittanning Service Center at the end of his probationary period. Wright, who met the residency requirement for the Arnold Service Center, was permitted to remain there.

Heilman filed this discrimination action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and the Pennsylvania Human Rights Act, 43 Pa. Cons.Stat. §§ 951, *et seq.* The District Court, having jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, granted sum-

---

1. The content of this meeting is not apparent from the record.

mary judgment in Allegheny's favor because it found that Heilman failed to prove a prima facie case of discrimination. Specifically, the District Court concluded that there was no genuine issue of material dispute and that Heilman was not qualified for the lead lineman position at the Arnold Service Center because his residence was more than 30 minutes away. In addition, assuming that Heilman was qualified, the District Court found that no genuine issue of material fact remained regarding Allegheny's legitimate, non-discriminatory reason for transferring him back to Kittanning, namely, the residency requirement. Heilman timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.[2]

## II.

We "exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court should have applied." *Shuman ex rel Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir.2005) (quotation omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must be drawn in his favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir.2009).

## III.

Heilman has offered no direct evidence of discrimination. In an indirect evidence case, it has been our usual practice to analyze the claims under the framework set up by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir.2007) ("We have stated that 'the ADA, ADEA, and Title VII all serve the same purpose . . . . . Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.' ") (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir.1995)). We note that the Supreme "Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context." *Gross v. FBL Financial Services, Inc.*, 557 U.S. ——, 129 S.Ct. 2343, 2349 n. 2, 174 L.Ed.2d 119 (2009). However, as it has been our practice to do so, and lacking direction from the Supreme Court, we will continue to apply the *McDonnell Douglas* regime. Thus, a plaintiff must first establish a prima facie case of discrimination. If a prima facie showing has been made, the defendant must shoulder a burden of production to articulate a legitimate, non-discriminatory reason for the employment decision. Ultimately, the burden of persuasion always remains with the plaintiff to establish that the defendant's reasons are pretextual and that the real reason for the decision was unlawful discrimination. *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir.2009) (citations omitted).

To establish a prima facie case of discrimination based on Allegheny's transfer of Heilman back to Kittanning, he must demonstrate that he is over 40 years old,

---

**2.** Heilman also included two claims for retaliation, under the ADEA and PHRA. The District Court entered judgment against him on these claims as well, but he does not appeal that decision.

he is qualified for the position at the Arnold Service Center, he suffered an adverse employment action, and other similarly situated individuals were treated more favorably. *Fasold v. Justice,* 409 F.3d 178, 184–85 (3d Cir.2005). The District Court, after determining that the record established that Heilman was not qualified for the position, did not analyze the remaining elements of a prima facie case. Because we write only for the parties, and because we agree with the conclusion reached by the District Court, we likewise will not address the remaining elements.

■ Heilman strongly urges on us that, in the normal course, the issue of an employee's qualification for a position should be resolved in the second and third stages of the *McDonnell Douglas* analysis. *See Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 523 (3d Cir.1992). This will normally prevent putting "too onerous a burden on the plaintiff in establishing a prima facie case." *Id.* Of course, Heilman is aware that "we have refused to adopt a blanket rule" to this effect. *Id.* (citation omitted). The District Court ruled that the there was no genuine issue of material fact regarding Heilman's qualifications for a lead lineman position at the Arnold Service Center, and he was not so qualified because he did not meet the residency requirement. We see no error.

Heilman argues that the 30–minute requirement is not an objective requirement but depends on many variables such as the weather and the route taken. This is undoubtedly true, but in a counterintuitive way it works against him. Allegheny maintained a residency requirement for its Pennsylvania locations. This requirement was measured in minutes of driving and not, for example, miles. We will not supplant Allegheny's construction of this requirement with our own. Allegheny is the employer and may apply its rules to its workers in any fashion it sees fit, save an unlawful one. After four separate time trials by Allegheny personnel, and a fifth by a Union representative, Allegheny concluded that Heilman lived outside the required range. The District Court's ruling that Heilman lived outside the 30–minute range is supported by the record. Thus, Heilman was not qualified for the position and did not establish a prima facie case of discrimination.

■ Assuming, *arguendo,* that Heilman could establish a prima facie case, including that he is otherwise qualified for the position, Allegheny articulates Heilman's failure to meet the residency requirement as its legitimate, non-discriminatory reason for its decision. Heilman raises several grounds to argue that this reason is pretext, all of which fail. First, Ryan Moore, who is younger than Heilman and lives more than 30 minutes from the Arnold Service Center, nevertheless has been allowed to remain stationed there. Moore, however, is a meter reader, not a lead lineman. Next, Keith King works at the Arnold Service Center as a lead lineman but lives more than 30 minutes away. King's situation does not shed light on Allegheny's motives because King moved there 10 years before and was given permission by a different supervisor. That is unlike Heilman, who was granted a transfer and given six months to relocate. Moreover, three other younger employees, Nick Randolph, Grant Pence, and Keith Melville, failed to meet the residency requirement and were prohibited from transferring to a service center unless they satisfied it.

Finally, Heilman argues that Allegheny has waived the 30–minute residency requirement for its employees in Mt. Airy, Maryland. Allegheny counters that the cost of living within 30 minutes of its service center there is prohibitively expensive

for its Mt. Airy employees. We are not tasked with reviewing the reasonableness of Allegheny's employment requirements. *Ezold,* 983 F.2d at 527 (citations omitted); *cf. Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.") (quotation and alteration omitted). Our only task is to decide if Heilman introduced enough evidence to get past summary judgment on his claim for discrimination. He did not.

To get past summary judgment, an employment discrimination plaintiff must either present enough evidence to cast sufficient doubt on the employer's legitimate, non-discriminatory reason, and thereby create a genuine issue of material fact as to it, or offer sufficient evidence to create a genuine issue of material fact that discrimination was the real reason for the action taken. *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994). Heilman failed to introduce enough evidence to create a genuine issue of material fact on either front. Thus, judgment against him was appropriate, Fed.R.Civ.P. 56(c), and we will affirm the judgment of the District Court.[3]

---

3. Judge Stapleton would assume, *arguendo,* the existence of a prima facie case and would hold that Heilman has not carried his burden of tendering evidence at the third stage of the *McDonnell Douglas* analysis.