**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3899

_____

SHAWN BULIFANT; GARY HUGHES;
DANIEL LOPER; JAMES MCCLINTOCK;
CHRISTOPHER VERNON,
Appellants

v.

DELAWARE RIVER & BAY AUTHORITY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-14-cv-07384)
District Judge: Honorable Noel L. Hillman

_____

Submitted under Third Circuit LAR 34.1(a)
on Friday, June 16, 2017

Before: JORDAN, KRAUSE, and GREENBERG, *Circuit Judges*

(Opinion filed: July 7, 2017)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge.*

Shawn Bulifant, Gary Hughes, Daniel Loper, James McClintock, and Christopher Vernon appeal the District Court's grant of summary judgment in favor of Appellee, the Delaware River & Bay Authority (DRBA), related to their claims under the Age Discrimination in Employment Act (ADEA). For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings on Hughes's and McClintock's age discrimination claims.

## I. Background

Appellants are crew members who have worked as seasonal employees for the DRBA's ferry services at various points between 2006 and the present. Appellants applied for full-time positions with the DRBA in response to job postings in February 2012, September 2012, and January 2013. With limited exception,[1] Appellants received interviews each time they applied, but ultimately were not selected for any of these full-time positions.

In making its hiring decisions for these positions, the DRBA employed a standardized approach in which the same panel of four DRBA employees interviewed every candidate for a given position using the same preset questions that focused on four core competencies—functional and technical skills, safety, customer service, and peer relationships. Based on the candidates' answers, each panelist assigned the candidates a numeric score in each competency. The scores of the four panelists were then added

---

[1] Vernon did not receive an interview for the February 2012 position, and did not apply for the January 2013 position.

2

together, and the candidates were ranked in order of their total scores.[2]  These rankings, as well comments from the panel on each candidate, were then submitted to human resources and the managing director for the position in question.

Although there is no record of what occurred when the rankings were submitted for the specific positions at issue in this case, the DRBA's executive director testified that the rankings are always used as an "important guide" in the ultimate selection.  App. 790. He also testified that while managing directors and human resources "have … the ability to deviate somewhat from the strict numerical rankings in order to achieve other goals . . . such as diversity or other specific goals," App. 788, "a record is made of why [the DRBA] picked who [it] picked" and an "explanation" is given when such deviation occurs, App. 791.

For the February 2012 position, the DRBA followed its rankings to a T, turning Appellants down in favor of those who ranked above them numerically.[3]  For the September 2012 position, however, the DRBA deviated from its standard practice, hiring the first-through-fourth ranked candidates, ages 52, 52, 24, and 52, but skipping over Hughes and McClintock, ages 61 and 53, and ranked fifth and sixth, in favor of the

---

[2] The record reflects that the competencies were not given equal weight when calculating a candidate's total score but does not disclose how they were weighted.

[3] We reference the February 2012 position for its relevance to reviewing the DRBA's general hiring practices and not as the basis for a claim in and of itself.  The District Court held that any claims with respect to that position were time barred because Appellants missed the deadline to file a related charge with the Equal Employment Opportunity Commission—a prerequisite to filing an age discrimination claim in federal court, *see* 29 U.S.C. § 626(d)(1)—and Appellants do not dispute this ruling on appeal.

seventh, eighth and ninth-ranked candidates, ages 35, 26, and 33.[4]  Despite its executive director's testimony that he would "be surprised" if a written explanation addressing this deviation did not exist, App. 792, the DRBA has not produced any contemporaneous records documenting the rationale behind the decision.  Thereafter, for the January 2013 position, the DRBA resumed its strict adherence to its rankings, rejecting Appellants in favor of the two highest-rated candidates.

Appellants filed suit, asserting that they were not hired for these positions due to their age in violation of the ADEA.[5]  In addition, because Appellants submitted complaints to the DRBA regarding this alleged age discrimination after their first round of unsuccessful applications, Appellants also asserted they were not hired for the two later positions in retaliation for their complaints—likewise a violation of the ADEA.  The District Court granted summary judgment in favor of the DRBA on the ground that, even assuming Appellants had established prima facie cases of discrimination and retaliation under the ADEA, they had not established that the DRBA's articulated legitimate reasons for their hiring decisions were pretextual.  This appeal followed.

## II.  Discussion[6]

---

[4] The remaining, lower-ranked, Appellants also were not offered a position.

[5] In their complaint, Bulifant, Loper and Vernon also assert they were unlawfully excluded from applying for additional positions in November 2011 and January 2012. The District Court concluded that these positions, which were open to internal applicants only, "d[id] not form the basis for [Appellants'] claims," App. 8 n.3, and Appellants have not challenged that finding.

[6] The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

4

We review the District Court's grant of summary judgment de novo. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). Summary judgment is appropriate where the moving party has established that "there is no genuine dispute as to any material fact" and, viewing the facts in the light most favorable to the non-moving party, "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Because we conclude that a dispute of material fact remains only with respect to Hughes's and McClintock's age discrimination claims, we will vacate the District Court's grant of summary judgment in the DRBA's favor on those claims and will affirm on all others.

### A.    Appellants' Age Discrimination Claims

To prevail on their ADEA discrimination claims, Appellants must establish by a preponderance of the evidence that age was the "but-for" cause of the DRBA's decision not to hire them. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78 (2009). Because Appellants rely on circumstantial evidence to prove their case, we evaluate their claim using the three-part *McDonnell Douglas* burden-shifting framework.[7] *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). That

---

[7] In addition to arguing that they have carried their burden under *McDonnell Douglas*, Appellants also contend that the *McDonnell Douglas* framework is not applicable because they have offered "direct evidence" of discrimination—that is, "evidence which, if believed, would prove the existence of [discrimination] *without inference or presumption.*" *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (citation and quotation marks omitted). The District Court carefully parsed Appellants' allegedly "direct" evidence, and we agree with its conclusion that none of this evidence proves discrimination, and much of it, when considered in context, does not even support such an inference.

5

framework requires a plaintiff opposing summary judgment to satisfy the initial burden of establishing a prima facie case of discrimination; if he does so, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its hiring decision; and if the defendant articulates such a reason, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered explanation was pretextual. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). If the plaintiff succeeds in "demonstrating sufficient evidence to allow a finder of fact to discredit the employer's proffered justification," summary judgment is not appropriate. *Burton*, 707 F.3d at 427.

To state a prima facie case of age discrimination at the first step of the *McDonnell Douglas* framework, a plaintiff must demonstrate "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately [not hired in favor of] another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644. All five Appellants satisfy this initial burden.[8] At the second step of the *McDonnell Douglas* framework, however, the rankings establish a legitimate, nondiscriminatory reason for the DRBA's failure to hire Bulifant, Loper, and Vernon for any position, and its failure to hire Hughes and McClintock for the positions other than the one posted in September 2012, as discussed

---

[8] Appellee does not appear to dispute Appellants' qualifications for the relevant positions, and the comments accompanying Appellants' interview rankings generally reflect that the DRBA considered them to be qualified applicants.

6

further below.  We agree with the District Court's conclusion that, to the extent the DRBA followed its own rankings system, its process was "formal, open, objective, and documented," App. 29,  and, thus, Appellants have not demonstrated for these positions that the DRBA's strict adherence to this system was a pretext for discrimination.[9]

The DRBA cannot rely on its rankings, however, to explain its failure to hire Hughes and McClintock for the September 2012 position.  Instead, although no contemporaneous explanation was documented, the DRBA now offers the non-discriminatory explanations that (1) the comments accompanying the rankings justified its hiring decisions; and (2) its hiring of lower-ranked applicants was necessary to promote diversity in its workforce.  Although these explanations were enough to shift the burden of production back to Appellants, Hughes and McClintock have offered enough competing evidence that a reasonable jury could conclude these explanations were pretextual.

---

[9] Appellants contend that the DRBA's reliance on its rankings is pretextual because the rankings are "entirely subjective in nature."  Appellants' Br. 33.  While we have cautioned that "low evaluation scores may be a pretext for discrimination," *Tomasso v. Boeing Co*., 445 F.3d 702, 706 (3d Cir. 2006), Appellants have offered nothing more than their own self-serving assessments that they were more qualified than higher-ranked applicants and an unsubstantiated hearsay statement to support their contention that they were scored less favorably than other applicants due to their age.  Moreover, while interviewers were given considerable flexibility when making their assessments, the process was not as opaque as Appellants claim.  Each interviewer rated each applicant in four specific job-related categories, and, unlike the case of *Alvarado v. Texas Rangers*, 492 F.3d 605 (5th Cir. 2007) on which Appellants rely, the interviewers supported their numeric rankings with specific comments reflecting their impressions of the strengths and weaknesses of the individual candidates.  *See Alvarado*, 492 F.3d at 617 (noting "[Appellant's] score sheets contain no notes or comments on her interview performance").

One way an ADEA plaintiff may demonstrate pretext is by "point[ing] to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action." *Willis*, 808 F.3d at 644. Such evidence "must indicate such weaknesses . . . in the employer's proffered legitimate reasons" that a reasonable fact-finder could "conclude the employer's actions could not have been for nondiscriminatory reasons." *Id.* at 644-45 (internal quotation marks omitted).

Hughes and McClintock have met this burden by identifying three significant weaknesses in the DRBA's proffered justifications. First, they point to the DRBA's deviation from its rankings system in favor of three significantly younger applicants with no contemporaneously documented explanation.[10] This evidence is compelling, as the DRBA consistently followed its rankings when hiring for the other positions, and has acknowledged that it presumptively follows the rankings—so much so that it has a policy of creating a written record documenting its reasons in the event of a deviation. Thus, what occurred here—with three applicants in their twenties and thirties leapfrogging two applicants in their fifties and sixties with no documented explanation as to why—is significant evidence of pretext in itself.

---

[10] The DRBA asserts that because Hughes and McClintock could not identify at their depositions the ages and qualifications of the lower-ranked candidates selected ahead of them, they cannot use these candidates as "comparators" for their discrimination claims. Appellee's Br. 24 n. 30. Appellants have consistently identified these younger, lower-ranked applicants who were hired over them in their briefing, and their inability to identify their comparators by name and to expound on their backgrounds while being deposed is immaterial to Appellants' claims.

Second, Hughes and McClintock cast doubt on the DRBA's supposed reliance on the comment sheets accompanying the applicants' numeric rankings. Hughes and McClintock are correct that the comments sheets are overwhelmingly positive about all five applicants in question, and thus do little to explain why the three younger applicants were selected and Hughes and McClintock were not.

Third, Hughes and McClintock undercut the DRBA's post-hoc explanation that its deviation from its rankings was necessary to promote diversity in its workforce. While the seventh and ninth-ranked applicants may provide diversity that Hughes and McClintock do not, the eighth ranked applicant—the youngest of the five by almost ten years—is, like Hughes and McClintock, a white male. Moreover, although the DRBA's executive director, when deposed as part of this lawsuit, identified diversity as a potential reason why the DRBA may have deviated from its rankings, he also testified that a written record explaining that deviation normally would have been generated. As noted above, no such record was generated here.

The District Court did not explicitly rely on either of these justifications as its basis for granting summary judgment in the DRBA's favor, but instead held that because the first, second, and fourth-ranked applicants who were hired were also over forty, "age does not appear to the reason why" McClintock and Hughes were not hired. App. 30. The District Court reasoned that, had age been the reason Hughes and McClintock were not offered positions, "it would follow" that the DRBA would have "skipped over" these older applicants as well. App. 29.

9

While we commend the District Court's careful assessment of the factual record, we conclude its reasoning misconceives Appellants' burden under the ADEA. The ADEA does not require that Appellants prove the DRBA had a blanket policy of not hiring any crew member over a certain age, but only that Appellants specifically were not hired because of their age. *See El v. SEPTA*, 479 F.3d 232, 239–40 (3d Cir. 2007) ("Title VII operates not primarily to the benefit of racial or minority *groups,* but to ensure that *individual applicants* receive the consideration they are due"); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 353 (3d Cir. 1999) ("Even if the plaintiff was replaced by someone within her own class, this . . . does not establish that the employer did not fire the plaintiff on the basis of her protected status."). Thus, while evidence of the ages of other hired applicants may be relevant to whether age was the "but-for cause" of the DRBA's decision, *Gross*, 557 U.S. at 178, it does not establish that the DRBA's proffered justifications were legitimate, and not pretextual, as a matter of law.

In sum, Hughes and McClintock have offered "sufficient evidence to allow a finder of fact to discredit the employer's proffered justification." *Burton*, 707 F.3d at 427. Appellants will bear the heavier burden at trial of "convinc[ing] the factfinder that not only was the employer's proffered reason false, but the real reason [they were not hired] was impermissible discrimination." *Willis*, 808 F.3d at 645. At this stage, however, they have offered enough evidence of pretext to put their case before a jury.[11]

---

[11] The DRBA makes much of the fact that three interviewers on the September 2012 interview panel were older than forty. Even accepting the non-binding opinions cited by the DRBA for the proposition that the age of the *decision-maker* is relevant in an ADEA case, the members of the interview panel were not the relevant decision-makers

## B. Appellants' ADEA Retaliation Claim

We also evaluate Appellants' retaliation claims under the *McDonnell Douglas* framework. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). To establish a prima facie case of retaliation, a plaintiff must show "(1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." *Id.*

Appellants have not made this prima facie showing because, even assuming they satisfied the first and second prongs, they have failed at the third prong to establish a causal connection between their protected activity and the DRBA's decision not to hire them. That is, the DRBA has posited Appellants were not hired due to their lower rankings, and, apart from Hughes's and McClintock's retaliation claims with respect to the September 2012 position, Appellants have not demonstrated to the contrary.

In contrast to their discrimination claims, however, Hughes and McClintock also have not demonstrated the "causal connection" necessary to support a retaliation claim vis-a-vis the September 2012 position. Such a connection is established when the "proffered evidence, looked at as a whole" supports an inference of causation. *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997). The evidence on which

---

for purposes of Hughes's and McClintock's claims. In fact, it is clear from the record that the interviewers themselves did not discriminate at all, as they ranked Hughes and McClintock more favorably than the eventually-hired, younger applicants. Thus, the ages of the interviewers here do not "mitigate[] any inference of pretext from [the] DRBA's bypass of Hughes and McClintock." Appellee's Br. 25.

11

Hughes and McClintock rely consists of three documents: (1) a May 29, 2012 letter to the DRBA's executive director protesting, among other things, the organization's prior age discrimination; (2) a March 25, 2013 EEOC discrimination charge filed by Loper; and (3) a March 31, 2013 letter to the DRBA's diversity manager protesting its past age discrimination. None of this evidence, however, gives rise to an inference of causation.

Two of these documents, the May 29th letter to the DRBA and Loper's EEOC charge, fail because Loper is the only signatory to either document, and Hughes and McClintock have not offered any evidence that reflects the DRBA knew they were involved in preparing these complaints prior to its decision not to hire them.[12] And although the March 31st letter is signed by all five Appellants, the DRBA, by that date, had already finalized its hiring for all but one of the September 2012 positions, with the one remaining hire finalized the following day. Thus, while "temporal proximity" between a complaint and an adverse action may sometimes create an inference of retaliation, *Kachmar* 109 F.3d at 177, the inference from this record, if anything, goes the other way, as Hughes and McClintock would be hard pressed to show (and indeed, have offered no evidence) that, in the one-day gap at issue, the DRBA based even that final adverse decision on Appellants' letter. Without more, Appellants have not created the inference of causation necessary to establish a prima facie case of retaliation under the ADEA.

---

[12] Although all five Appellants testified that they signed a different version of the May 29th letter, no such letter has been produced by either party, and there is no evidence that this version was ever received by the DRBA.

**III.    Conclusion**

For the foregoing reasons, we will affirm in part, vacate in part, and remand to the District Court for further proceedings consistent with this opinion.