[Cite as *State v. Cruz*, 2022-Ohio-3356.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                          Court of Appeals No. E-21-057

    Appellee                                      Trial Court No. 2020 CR 0420

v.

Exavier I. Cruz                                       **DECISION AND JUDGMENT**

    Appellant                                     Decided: September 23, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Robert Cabrera, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Exavier I. Cruz, appeals from a judgment entered by the Erie County Court of Common Pleas, sentencing him to serve a term of imprisonment of three years plus life, with parole eligibility after 30 years. For the reasons that follow, we affirm the judgment of the trial court.

## Statement of the Case

{¶ 2} This case arises out of the shooting death of the victim on or about December 5, 2020.  Appellant, acting in concert with two other individuals, purposefully caused the victim's death while committing, or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery of the victim, at the victim's home.

{¶ 3} On December 22, 2020, appellant was named in a 12-count indictment, charging him with: (1) one count of aggravated murder, in violation of R.C. 2903.01(B) and R.C. 2929.02(A), an unclassified felony; (2) two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1) and (C), felonies of the first degree; (3) two counts of aggravated burglary, in violation of R.C. 2911.11(A) and (B), felonies of the first degree; (4) two counts of felonious assault, in violation of R.C. 2903.11(A)(2) and (D)(1)(a), felonies of the second degree; (5) one count of improperly discharging a firearm at or into a habitation or a school safety zone, in violation of R.C. 2923.161(A)(1) and (C), a felony of the second degree; (6) one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree; (7) one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3) and (B), a felony of the third degree; (8) one count of tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree; and (9) one count of theft, in

2.

violation of R.C. 2913.02(A) and (B)(2), a felony of the fifth degree.  Nine of the twelve counts included firearm specifications.

{¶ 4} After appellant initially pleaded not guilty, his counsel successfully negotiated a plea agreement with the state.  Pursuant to the plea agreement, appellant agreed to plead guilty to one count of aggravated murder, an unclassified felony, with a firearm specification.  In exchange, the state agreed to dismiss the remaining counts of the indictment.  In addition, the parties jointly recommended a sentence of life in prison with the possibility of parole after 20 years, with an additional three years for the firearm specification.  The state also agreed to remain mute at any future parole proceedings

{¶ 5} The plea sheet and plea transcript demonstrate that appellant understood that the victim's family was not in agreement with the recommended sentence.

{¶ 6} Prior to accepting the plea, the trial court engaged appellant in a lengthy Crim.R. 11 colloquy to ensure that the plea was being made voluntarily, knowingly, and intelligently.  During the colloquy, the trial court advised appellant:

> Now, you understand that any recommendation as to sentence the Court will consider, but is not required to follow.  You and your attorney and the State are making a recommendation.  You're all in agreement on that.  Probation's going to do a PSI.  They make a recommendation.  The victims may have an input.  A lot of people may have an input.  The Court will consider all that, but is not required to follow it, even if everybody

3.

agrees to the same recommendation.  Their job is to make a recommendation.  It's this Court's job to hand down the sentence.  Do you understand that?

Appellant confirmed his understanding.

{¶ 7} The trial court further advised appellant that he was facing a mandatory 3-year sentence on the firearm specification and a possible sentence of life imprisonment without the possibility of parole on the aggravated murder charge.  After being fully advised of his rights and the potential penalties he was facing, appellant pleaded guilty to one count of aggravated murder with a firearm specification.  The judgment entry of plea, which was signed by appellant, expressly states: "I understand the Judge sentencing me does <u>not</u> have to follow any *Recommended* sentence when sentencing me." (Emphasis in original.)

{¶ 8} Appellant's sentencing hearing was held on November 29, 2021.  After a thorough review of all of the relevant statutory factors, the trial court rejected the joint recommendation for sentencing.  Instead, the court imposed a sentence of three years plus life imprisonment, with parole eligibility after 30 years.  Appellant timely appealed.

## Statement of Facts

{¶ 9} The offense in this case arose in connection with a robbery involving appellant, his two co-defendants, and the victim.  The victim was a career drug dealer.  As appellant was fleeing after committing the robbery, the victim came running out of his

4.

house with a firearm and started shooting, hitting one of appellant's co-defendants. Appellant returned fire. The victim was shot and was later pronounced dead at the hospital. Although appellant and his two co-defendants were all charged with the victim's death, appellant, as the shooter, was identified as the principal offender.

{¶ 10} At the November 29, 2021 sentencing hearing, the trial court confirmed that it had reviewed impact statements from the victim's mother, his two children, his aunt, as well as one of his friends. The victim's mother and wife then spoke directly to the court. The family asked the court to impose a sentence of life in prison without the possibility of parole. Defense counsel asked the court to follow the joint recommendation of the parties and impose a sentence of life in prison with the possibility of parole after 20 years, plus three years for the firearm specification. The state adhered to the joint recommendation. The court then gave appellant the opportunity to make a statement.

{¶ 11} After hearing from the parties, the trial court explained that it had considered the purposes and principles of sentencing identified in R.C. 2929.11 and the seriousness and recidivism factors identified in R.C. 2929.12. First, the court noted appellant's juvenile record:

> You have adjudications for delinquency going all the way back to 2012. You have adjudications for domestic violence three different times. You have drug convictions for possession and conveyance on property,

5.

detention centers and things of that nature. Carrying a concealed weapon, attempted burglary, criminal trespass, theft. Those all kind of mirror what happened here in the adult court. We have violence, we have drugs, we have a weapon, and we have trespass, all of 'em, and theft. We have all of 'em. Mirror this offense.

You've had DYS commitments, Department of Youth Services commitments in the past. You've had electronic monitoring in the past.

And let me digress for a second. This Court has a lot of respect for your counsel. This has nothing to do with him. As I said, it has to do with the facts and the law, okay? He indicated you had mental health issues. The Court saw that in the presentence report and investigation.

The Court looked at your juvenile record. You had counseling back then in your juvenile years. So you've had electronic monitoring, counseling, probation, psychological evaluation. DYS commitment I've already talked about, more electronic monitoring, more probation. You * * * were committed to the DYS, Department of Youth Services, and granted judicial release, let out early from that. That was your juvenile record.

Next, the court considered appellant's adult criminal record:

Your adult record, what do we have there. Well, since you're 23, it's kind of small because you turned 18. It's only been a few years, but

2018, possession of cocaine. You received two years of probation, intensive supervision probation. You received counseling. You had violations of that, probation violation. You were then sent to a community-based correctional facility, one step under a prison, to try to help you, to get you counseling, to teach you things that your counsel talked about here, and what happened there? You were unsuccessfully terminated from that program at the CBCF. And then you were still on probation when you committed this offense, and your probation for that offense, the possession of cocaine, which you were on probation when you committed this offense, that probation was terminated unsuccessful.

The court also considered appellant's "attitude offenses":

Okay. Then you have what I deem attitude offenses. What are those. Well, they're not misdemeanors or felonies, and we usually see 'em in traffic-related offenses, and let me say everybody that drives gets a traffic offense. * * * But when someone constantly gets the same ones over and over again, it says something about a person. They know what the law is, but they're choosing to do what they want to do because they want to do it. That's attitude offenses.

Why do I say that about you. 2018, turn signal violation; 2018, going 87 in a 60 mile an hour zone, 27 miles over.

7.

2019, reckless operation, willfull, * * * wanton disregard, physical control; 2019, oh three weeks later, driving on a suspended license, stop sign violation; 2019, about two weeks later, driving on a suspended license, improper display of plates.

2020, driving on a suspended license; 2020, about four months later, driving on a suspended license and tinted glass.  Now, you know you got to have a license to drive in Ohio, but you didn't. Why?  Because you wanted to drive, so you did.  Even though you've been charged, maybe paid fines on it, found guilty of it or responsible, you did it because you want to do it.  Attitude offenses.

The court also considered a case involving "participation in a gang, criminal gang, possession of drugs, and felonious assault" that was then pending against appellant.  The court clarified that that it would consider the pending charges for purposes of determining appellant's likelihood of recidivism, but would not treat the pending charges as a conviction.

Finally, the court considered reports from the jail related to appellant's conduct:

August 18, 2021.  Inmate Cruz walked up to the med cart and said, I want to throw water at her, talking about the nurse.  Didn't know who he was referring to, so they stood by.  They were trying to get you to your cell.

8.

You picked up a trash can, as if you were going to throw it at the officer, the corrections officer, but you never let – and you never let go.

You were told to go to lockdown. You refused. You still refused. They had to escort you. You started resisting. You were not going to comply. They had to call in other people, then place you in a restraint chair.

During this time, you began shoving and pulling away from the deputies. You shoved Deputy Laird off of you. You were able to grab ahold of the door frame and fight and resist them as they were trying to get you in lockdown. They were – you were able to get back up and you pulled away from the deputies after they took you to the ground. You failed to comply with their orders.

When they finally got you there, you said, quote: The fun is going to continue until I get – till I get moved out of this county.

Inmate Cruz took the trash can and blocking and swung it, as if the Inmate Cruz was going to throw it at her. This is just more reports about what you had done. That was then.

The same day, later that night, another incident. You wanted to go take a shower. They told you no. You said you were going to take one no matter what, basically, and so they had another incident. They started

arguing. You tried to advance towards the shower. You refused to comply with the lockdown order they told you, multiple orders to lockdown. They finally had to pull out their taser to get you to comply.

August 19th. Inmate Cruz returned. You were sent back to Sandusky County Jail because of all your disruptive behaviors in this jail. You were placed in administrative segregation until further orders.

And then the interesting one is November 12 of 2021, just a couple weeks ago, after the plea, because you pled September 30th. Inmate Cruz advised that when he gets sentenced, he's coming back here and fighting Inmate Kozlowski. After you pled guilty to this, you go back over there and, a couple weeks ago, say when you're done being sentenced, you're going to go back and get in another fight with another inmate. Your behavior in the jail.

{¶ 12} After reviewing appellant's record, the court proceeded to review the seriousness and recidivism factors in R.C. 2929.12 and found that appellant's current offense was more serious than normal because it involved: (1) a drug sale; (2) the fact that the robbery was planned and organized; (3) a victim who had died; (4) a relationship with the victim that facilitated the offense; (5) shots fired into innocent neighbors' homes; (6) the fact that appellant lied to law enforcement and made up an alibi; and (7) the fact that committed the crime in front of the victim's two young children. The court

added that none of appellant's behavior showed that he was taking responsibility for his actions. The court also reviewed the factors that made this offense less serious than normal, including the fact that the victim in this case had induced or facilitated the offense by coming out of his house with a gun, confronting appellant, and shooting one of appellant's co-defendants.

{¶ 13} The court found that none of the recidivism factors in R.C. 2929.12(E) leaned in appellant's favor. Specifically, the court noted that appellant was on probation or parole at the time of the offense, he had previously been adjudicated a delinquent child, he had a history of criminal convictions, he had not been rehabilitated satisfactorily as evidenced by the fact that "the same things that we saw in your juvenile record we saw in this event," he had not responded favorably to previous sanctions, he had shown no genuine remorse for the crime, and "based on what we've seen in the past, and what we see here, violence, drugs, guns, it's likely to reoccur again."

{¶ 14} Based on its review of the facts, the trial court ultimately rejected the joint recommendation for sentence, concluding as follows:

> You know, the State and your counsel, and the Court has respect for your counsel and the State, made a recommendation to this Court that you should be sentenced to life imprisonment with parole eligibility after 20 years. That – plus the three years for the gun spec. That would get you out at about 46 years old.

11.

This Court doesn't find that that is significant or appropriate for you. Instead, the court imposed a sentence of three years plus life imprisonment with parole eligibility after 30 years.

## Assignment of Error

{¶ 15} Appellant asserts the following assignment of error on appeal:

I. The trial Court erred in violation of Cruz's due process rights under the Fourteenth Amendment to the United States Constitution and Article I Section 16 of the Ohio Constitution by relying on false and unreliable information in sentencing Cruz, and as such, is contrary to law.

## Analysis

{¶ 16} This court reviews sentencing challenges under R.C. 2953.08(G)(2). *State v. Villarreal*, 6th Dist. Sandusky No. S-17-020, 2018-Ohio-888, ¶ 15. That statute permits an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is contrary to law.

12.

*Id.*; R.C. 2953.08(G)(2). Appellant does not challenge the trial court's compliance with any of the sentencing statutes identified in R.C. 2953.08(G)(2)(a). Rather, he claims that his sentence is contrary to law because the trial court violated his due process rights by "relying on false and unreliable information." In particular, appellant questions the trial court's reliance on his juvenile record and his relationship to the victim at sentencing.

{¶ 17} As an initial matter, it is undisputed that "[a] trial court does not err in imposing a sentence greater than that recommended by the state under a negotiated plea agreement where the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." *State v. Vargyas*, 6th Dist. Wood No. WD-20-068, 2021-Ohio-3383, ¶ 10, citing *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6, quoting *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772. 796 N.E.2d 1003, ¶ 13 (5th Dist.).

{¶ 18} In the present case, the trial court specifically advised appellant before accepting his plea that the court was not required to follow the recommendation of the parties, and that appellant was facing a mandatory three-year sentence on the firearm specification and a possible sentence of life in prison without the possibility of parole on the aggravated murder charge. The judgment entry of plea also reflects these forewarnings. Thus, the record is clear that the trial court, in this case, did not err in imposing a sentence that was greater than the recommended sentence.

13.

{¶ 19} Next, we review appellant's claim that the trial court violated his due process rights by using his juvenile record to "enhance" or "elevate" his sentence. In support of this claim, appellant cites *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448. In *Hand,* the Ohio Supreme Court reviewed the interplay between R.C. 2929.13(F)(6), which requires a mandatory prison sentence for anyone who is convicted of a first or second degree felony and was previously convicted of a first or second degree felony, and R.C. 2901.08(A), which classifies a juvenile adjudication as "a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and * * * the sentence to be imposed upon the person relative to the conviction or guilty plea." Applying these two statutes, the trial court had sentenced Hand to a mandatory prison term for his first and second degree felony convictions because he had previously been adjudicated delinquent of an act that would have been a first degree felony if committed by an adult. The Supreme Court, however, determined that R.C. 2901.08(A) violated the Due Process Clauses of Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution "because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Id.* at ¶ 37. The court further held that a juvenile adjudication "cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum" because a juvenile has no right to a jury trial. *Id.* at paragraph two

14.

of the syllabus, citing *Apprendi v. New Jersey*, 530 U.S. 466, 129 S.Ct. 2348, 147

L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186

L.Ed.2d 314 (2013).

{¶ 20} Appellant interprets the Ohio Supreme Court's ruling in *Hand* to mean that

the trial court used his "juvenile record impermissibly to elevate the recommended

sentence two levels." However, this court has expressly rejected such an interpretation of

the *Hand* decision. In *State v. Villarreal*, 6th Dist. Sandusky No. S-17-020, 2018-Ohio-

888, the defendant similarly interpreted "the court's holding in *Hand* to mean that a trial

court cannot consider an offender's juvenile adjudications when weighing the seriousness

and recidivism factors in R.C. 2929.12." *Id.* at ¶ 20. This court disagreed "because, as

the [Ohio] Supreme Court noted, 'there is a significant difference between allowing a

trial judge to consider an adjudication during adult sentencing and requiring a mandatory

prison term to be imposed because of it.'" *Id.*, quoting *Hand* at ¶ 20. As this court

explained, "*Hand* forbids the use of a juvenile adjudication in a way that *requires* the trial

court to impose a harsher sentence on the defendant because of the prior adjudications'

existence." *Villarreal* at ¶ 21 (emphasis in original). The court then distinguished R.C.

2929.12, stating:

> * * * R.C. 2929.12 does not demand that the trial court impose a
>
> harsher sentence because the defendant was previously found delinquent.
>
> Rather, the statute requires the trial court to consider the fact of the prior

adjudication – along with a host of other facts – to determine the punishment that best fulfills the principles and purposes of sentencing in R.C. 2929.11.

Thus, this court held that "nothing in *Hand* prohibits a trial court from *considering* a defendant's prior criminal history, including his juvenile adjudications, when weighing the factors in R.C. 2929.12. *Id.* (emphasis in original). In light of the foregoing authority, we find that the trial court did not err by considering appellant's juvenile record when weighing the factors in R.C. 2929.12.

{¶ 21} Appellant also contends that the trial court incorrectly concluded that the relationship with the victim facilitated the offense "based upon its belief that [appellant] knew the [victim], and previously entered his house that day." In reviewing the seriousness and recidivism factors under R.C. 2929.12, the trial court found with respect to 2929.12(B)(6), involving the question of whether appellant's conduct was more serious than conduct normally constituting the offense of aggravated murder:

The relationship with the victim facilitated this. This was during a drug deal. Then as the state said, and the Court read * * * in the police reports, shots were fired into innocent neighbors' homes.

{¶ 22} Appellant contends that his relationship with the victim did not facilitate the offense, because he did not know the victim and only entered his home once on the day in question. There is no question, however, that appellant acted in concert with two

16.

other individuals in effectuating the robbery and death of the victim. Appellant concedes that one of his co-defendants had a relationship with the victim. That co-defendant used that relationship to enter the victim's home to case the location for the presence of money and drugs. Appellant and his co-defendants then used that knowledge to collectively develop a plan to rob the victim of money and drugs, which ultimately resulted in the victim's death. Under the circumstances of this case, the trial court correctly found that appellant and his co-defendants used the relationship with the victim to facilitate the commission of the offense.

{¶ 23} Finally, we note allegations by appellant, set forth throughout his brief, that the trial court improperly weighed the purposes of felony sentencing, as defined in R.C. 2929.11, and the seriousness and recidivism factors, as defined in R.C. 2929.12, when it determined his sentence. Unfortunately for appellant, the Ohio Supreme Court's decision in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, prevents this court from independently weighing the evidence in the record and substituting its own judgment for the trial court's judgment regarding the sentence that best complies with the dictates of R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 39, 41-42; *see also State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶ 10 (Brunner, J., concurring) (noting that R.C. 2953.08 "precludes second-guessing a sentence imposed by a trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12."). "Indeed, as this court has repeatedly recognized, we are precluded from reviewing a felony sentence

17.

'where – as here – the appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when fashioning [a] sentence." *State v. Johnston*, 6th Dist. Wood No. WD-21-038, 2021-Ohio-4347, ¶ 13, quoting *State v. Senson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42, and *State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13. Thus, the law clearly prohibits this court from examining the merits of appellant's claims that the trial court's sentence does not comport with the purposes of felony sentencing under R.C. 2929.11 and that the trial court improperly weighed the seriousness and recidivism factors in R.C. 2929.12.

{¶ 24} For all of the foregoing reasons, appellant's assignment of error is found not well-taken. The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.